Vilma Esperanza Castejon-Paz, 22-6024 Let me make sure, Ms. Robinson, can you see and hear us? Yes, Your Honor, I can. Can you see and hear me? I can. And Judge Calabresi, you guys, all right, good. Everybody can see each other? Yep. All right. And we have Mr. Jessen in person, and Mr. Jessen has reserved three minutes for rebuttal, and you can begin when you're ready, sir. Good morning, Your Honors. May it please the Court, John Jessen for petitioner, Vilma Castejon. This Court does have jurisdiction to review the immigration judge's December 15th, 2021 decision. In that decision, the immigration judge decided that the assignment officer was correct in the reasonable fear determination, negative reasonable fear determination. That no reasonable fear determination rose from the June 9th, 2014 green statement of petitioner's August 28th, 2012 removal order. Under Riley v. Bondi, the Court has jurisdiction under the mandatory claims processing rule. The government has waived the 30-day deadline for the petition for review in this case alone. Section 1252, subsection B, subsection 1 is a mandatory deadline, but petitioner is not barred from review of her petition based on the waiver by the government. Following the recent decisions in Navarrete v. Bondi, excuse me, in Haley's v. Attorney General, which the government has produced the 28J letters concerning, if the Court would follow those decisions, that would deprive the petitioner of review of her coverable due process claim, which was lack of notice of a reasonable fear hearing. The government does concede that there It's our position, Your Honors, that both decisions circumvent the majority opinion in Riley that the courts do have jurisdiction review withholding only in convention against torture claims, even though the order, the removal order occurred some years ago. Okay. Counsel, let's assume that I agree with you that at least in torture cases, 1252A4 specifically grants a right to attack and jurisdiction regardless of whether the order has been attacked as well, because it would make very little sense in any way the statute seems to allow it that way. You say that your client didn't get notice. My question is, had she gotten notice, the question on torture seems to be one of acquiescence. Is it your argument that you might be able to come up with some acquiescence arguments if you really had a chance to get there before it? It is our position, Your Honor. Even though, as the government pointed out, there was no regulatory or statutory requirement as far as what evidence can be produced or testimony at that, you know, review of the determination hearing, the Immigration Court Procedure Manual does permit, in some cases, evidence. It does permit testimony, argument by counsel. So it's our position that at that, if this case was remanded to the immigration judge, we would have the opportunity to produce current country condition reports on Honduras and make that claim further on the convention against torture. So doesn't that argument, in effect, eviscerate the prejudice requirement when you're asking us to assume that you would be able to demonstrate that your client was prejudiced by her absence and failure to give notice, but you haven't proffered any evidence before us or that's in the record that would demonstrate that? I believe that we haven't, Your Honor. I mean, in the record, I believe there were reports concerning or there was discussion concerning country conditions in Honduras. And obviously, those conditions can change year to year. So, you know, I think, again, if we had the opportunity to have presented, you know, additional arguments, you know, before the judge, and also we point out that the judge, you know, used the wrong standard. I mean, basically used the credible fear standard in determining that, in denying the review, rather than the reasonable fear standard. You might also make an additional argument that, after all, these cases have been focused so much on jurisdiction, and there's only so much that somebody can do. You've been doing a lot of arguing about jurisdiction existing, and somehow the merits have gotten pushed to one side, and you might say, give me a chance and I'll see what I can do. That's correct, Your Honor. You know, obviously, a number of years have gone by since that time. The case law is constantly evolving or changing concerning, obviously, asylum and convention against torture claims, as well as, again, you know, country conditions. So I think the fact that the petition was deprived of that right to at least have a review, which is statutory or regulatory, to have that review of the asylum officer's findings, and for basically, I believe, in effect, the immigration judge just rubber stamping the decision of the asylum officer, without the benefit of counsel and the respondent or petitioner at that hearing, is a violation due process. And, you know, she should be given that chance to, you know, produce any additional evidence and make these arguments at that hearing. Thank you. Thank you, Your Honor. Thank you, Counsel. You've reserved some time. We'll hear from Ms. Robinson. And, Ms. Robinson, we're glad you can join us, albeit electronically. You have eight minutes for your argument in this of the two tandem cases. Okay. Thank you, Your Honor. So, good morning, Your Honors, and may it please the Court, Marie Robinson for the United States. In Rodriguez, the Court raised a fundamental jurisdictional issue that also impacts this case and said that reinstatement of removal involves no new removal order. Instead, the non-citizen is simply removed under the prior order. So the government submits, but timeliness aside, there is a fundamental jurisdictional problem here because the Court lacks jurisdiction to review these petitions because they do not challenge any final order of removal. But isn't that absurd? That would mean that people, rather than conceding removable, which is something we want them to do when there's no real argument on that, would fail to do that every time because that would be the only way they would have jurisdiction. So that before we reach that conclusion, we would have to find that the statutes are absolutely clear. Now, at least with respect to torture, 1252A4 seems to be quite clear that you have a right to claim torture, period. And the Supreme Court, in Riley and other cases, has suggested that that is so. So why on earth should we get into this jurisdictional argument, which the Supreme Court has not liked in general, to do something that doesn't really make terribly much sense? Explain why in a mixture of statutes. You know, I'll grant you there are some statutes that could be read your way. But why on earth should we? Now, I understand the Ninth Circuit has read that. They're going unbanked. And the other circuits are split so that perhaps it doesn't really matter what we say because the Supreme Court has got to ultimately decide it. But tell me why. Yes, Your Honor. So as Your Honor is well aware, under 1252, the Court of Appeals has jurisdiction to review a final order of removal. And under 1252B9, judicial review is available only in judicial review of a final order under this section. And so as far as 1252A4, I would posit that it confirms that convention against torture orders may be reviewed together with a final order of removal. So if a court does not otherwise have jurisdiction to hear a petition under 1252A1 because it isn't reviewing a final order, then it would not have jurisdiction to review under the FARA either. I mean, isn't this actually exactly the circumstance that the Supreme Court contemplated in Riley? And the conclusion that the Supreme Court came to was a conclusion contrary to the one that you're urging on this Court. They contemplated the circumstance in which a petitioner would not challenge removal itself, but would only challenge removal to a particular country. And they said, don't worry about that. Riley doesn't undermine that. And, in fact, there's a ready answer to that. File your petition within 30 days of the order of removal. Ask the Court of Appeals to defer taking any action because you're not challenging the order of removal. And then once you've got the decision with respect to Kat, you can then challenge the decision with respect to Kat, even if you've not challenged the order of removal itself. We're an intermediate court. That's what the Supreme Court seems to have said. Right. So, Your Honor, I would just point out that Justice Thomas joined the majority opinion in full and then did a concurrence. And in his concurrence, he raises the question as to whether there is even a final order at all. We don't follow. I'm very fond of Justice Thomas. I even got him his first job. But we don't follow concurring opinions. We follow the opinion of the Court. Yes, Your Honor. But I would just point out that this Court in Rodriguez, in the criminal context, said reinstatement of removal is not a new removal order. The noncitizen is simply removed under the prior order. And to quote this Court in Bocca di Patel, there isn't a functional equivalent of a removal order under 1101A47A. It either is a removal order, a final order of removal, or it isn't. And so I don't see how, if a reinstatement order is not a final order of removal under Rodriguez, a decision denying withholding or cap protection is not a final order that's reviewable under Riley and Nasrallah, then how is a reasonable fear denial a final order of removal? Isn't that an argument that you should take up with the Supreme Court and explain to the Supreme Court why, when five justices signed on to language that says, don't worry about it. You can always challenge the cap order, even if you don't challenge the order of removal, why the Supreme Court shouldn't follow what five justices said lower courts should follow? But, Your Honor, I would point to the Ninth Circuit and the Eleventh Circuit's now decision in Robert Hills. The Ninth Circuit specifically followed Justice Thomas's concurrence and took it further. They didn't follow the majority. They didn't deal at all with the issue that Riley seemed to deal with. And the Ninth Circuit is also now being taken in bed. But apart from the fact that we rarely follow the Ninth Circuit, for good reason, but the Ninth Circuit doesn't seem really to counter the argument that Judge Lyman has made about what the Supreme Court said. Your Honor, I would just point out that Riley, like this court, answers the jurisdictional questions that are posed by the parties. And as Your Honor noted, we were running around on the timeliness issue for quite some time. Yes, I was involved in that more timeliness ago than I can remember. Yes. So there was quite the debate on timeliness and the jurisdictional deadline and whether it was mandatory. And there was a briefing on that. I vividly recall it was due around Christmas. And so this issue was raised with the concurrence as an aside. And at that point, that jurisdictional question had not been posed. It had not been addressed by the parties and or by this court. I mean, I hate to quote Your Honor's opinion, but having settled the jurisdictional question posed to us. And so at this point, this jurisdictional question is squarely presented and the court should address it because. I agree that the jurisdictional question was not and that we put it off and that it is now time for us to address it, assuming that we have to. Because if there weren't anything to be said about the merits, then we could assume jurisdiction and decide. But if there is a merits argument in favor of petitioner, then we must decide whether we have jurisdiction or not. And that's why we're asking you why the language of Riley doesn't tell us that we have jurisdiction. Yes, Your Honor. And I'm sorry, was there. I don't want to dodge the court's question. So if there is a question in there, what would you. So I would say that the jurisdictional question was not settled by Riley and it's now squarely posed. And I would say that aside from the United States versus Rodriguez, which discussed the the reinstatement question. And there is also some language in Bhakta by Patel discussing the courts that the court not really examined why reinstatement is a final order. I would say that the only final orders in this case that the petitioners are challenging are the only final orders here are the 2010 order. The 2012 order in Kastafan. And that is not being challenged. So would you. I would say it's not the merits argument and why we should not conclude that holding the hearing when the petitioner did not get notice of it violated the petitioner's due process rights. Of course, Your Honor. So I would just note first that she does, as Your Honor noted, there there isn't any prejudice argument that has been presented here. There is an argument. She doesn't point to any evidence or arguments aside from country conditions that she was prevented from presenting or that she would present on remand. Your argument isn't that the failure of notice isn't a sufficient violation. Your argument is that in this particular case, it is harmless. Yes, Your Honor. And I would say as well that there is no regulatory requirement that the alien be present or be permitted to testify under 8 CFR 12 08.31. Immigration judge has discretion over those hearings because they are such an abbreviated review of the asylum officer's decision. But I I think the court doesn't need to get there because here they're so clearly it's not that there's not prejudice here. All right. We're going to hear from you again in the next case. Thank you, Ms. Robinson. We'll hear again from Mr. Jessen. Thank you, Your Honor. You have three minutes for rebuttal. Thank you, Your Honor. Your Honor, in referring to AUSC section 1252 B-9, which is the so-called zipper clause, that provision does state a judicial review of all questions of law and fact, including interpretation, application, constitutional and statutory provisions arising from any action taken or proceeding brought to remove it down from the United States under this subchapter shall not be available only in judicial review of a fund order under this section. But, you know, our argument, Your Honor, is that this can also be interpreted to, you know, obviously the government's position is that, you know, it's a judicial review of fund order. But looking at the language in reference to the constitutional and statutory provisions, again, I believe the argument can be made that, you know, the Court again does have jurisdiction and just as Riley set forth and did discuss the zipper clause as well in its opinion. As far as the Petitioner not being prejudiced, again, you know, how do we know unless we give another opportunity for the Petitioner to, you know, to do what she's already deprived of, which was to have due process and be able to present her case to the review by the immigration judge. And, again, the Immigration Procedure Manual does, you know, set forth what can be brought forward is a hearing. So, you know, I think, again, you know, the Court does have jurisdiction in this matter. And the fact that this was a culpable claim, constitutional claim violation due process, which, again, the government concedes, you know, we'd never know for certain as far as whether there is prejudice or not prejudice, you know, we should err on the side of giving the Petitioner the opportunity to at least have this review by the immigration judge. Thank you. Thank you. Thank you, counsel. This matter will be taken under advisement.